## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

*7 HOPKINS*

### "IN ADMIRALTY"

# 06-61047

*CIV-HURLEY*

G & G MARINE, INC., d/b/a G & G
SHIPPING,

     Plaintiff,

-vs-

NINA (BERMUDA) LTD., d/b/a FTD
SHIPPING LINES,

     Defendant,

_____/

### DEFENDANT'S NOTICE OF REMOVAL

COMES NOW, Defendant NINA (BERMUDA) LTD., d/b/s FTD SHIPPING
LINES (hereinafter "FTD"), by and through undersigned counsel and desires to
exercise its rights under the provisions of Title 28 U.S.C. § 1441, *et seq.*, to remove this
action from the Circuit Court for the 17th Judicial District of the State of Florida, in
which said action is now pending under the above-captioned title Case No. 06-009346
CACE 04.

1. This is an action in which the District Courts of the United States have been
given original jurisdiction upon each of the following bases:

a. Plaintiff, G & G MARINE, INC., d/b/a G & G SHIPPING., (hereinafter
"G&G") seeks to recover from Defendant damages they allege arise out of a maritime
contract with FTD. As more fully described below, this claim is an action within the
admiralty and maritime jurisdiction of 28 U.S.C. § 1333 and is an admiralty and



maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

b. Defendant FTD is a foreign corporation doing business within the State of Florida. Plaintiff G&G is a corporation formed and existing under the laws of the State of Florida whose principle place of business is within of the State of Florida. Complete diversity exists between the parties. The amount in controversy is in excess of Seventy-Five Thousand Dollars and No/100s ($75,000.00). This cause of action is within the original jurisdiction of 28 U.S.C. § 1332.

2. On November 4, 2005, Nina (Bermuda) Ltd. d/b/a FTD Shipping Lines ("FTD") and G&G Shipping entered into a Space Charter Agreement.

3. That Space Charter Agreement contained an arbitration clause specifically incorporating the rules of the Society of Maritime Arbitrators of New York, Inc.

4. FTD has initiated arbitration proceedings with the Society of Maritime Arbitrators pursuant to the Space Charter Agreement for breach of contract.

5. G&G filed suit in the Circuit Court for the 17th Judicial Circuit whereby they alleges claims for Fraudulent Inducement into a Maritime Contract, Rescission of a Maritime Contract and Fraudulent Misrepresentation relating to a Maritime Contract.

6. G&G seeks damages in excess of the amount of Fifteen Thousand Dollars and No/100s ($15,000.00) plus interest and costs and the total amount in controversy is in excess of Seventy-Five Thousand Dollars and No/100s ($75,000.00).

7. On June 27, 2006 G&G filed the above captioned suit in the Circuit Court for the 17th Judicial Circuit of Florida naming FTD as a Defendant. FTD was served, through

their registered agent in Florida, with a summons and a copy of the complaint on June 29, 2006 at 11:00am. A copy of the Complaint is attached hereto as **Exhibit A**.

8. No further proceedings have occurred in the Circuit Court for the 17th Judicial Circuit of Florida in this case.

9. This Notice is filed with this Court within thirty (30) days after service on FTD of the Complaint in the above-entitled action.

10. A copy of this Notice of Removal is being filed with the Circuit Court for the 17th Judicial Circuit of Florida.

WHEREFORE, Defendant NINA (BERMUDA) LTD., d/b/s FTD SHIPPING LINES gives notice of the removal of the above-entitled action from the Circuit Court for the 17th Judicial Circuit of Florida to the U.S. District Court for the Southern District of Florida.

Dated: July 1 7, 2006

Respectfully submitted,
**Moore & Company, P.A.**

By:   Michael Moore, Esq.
Florida Bar No. 207845
mmoore@moore-and-co.net
Erin J. Ackor, Esq.
Florida Bar No. 643637
eackor@moore-and-co.net
355 Alhambra Circle
Suite 1100
Coral Gables, Florida 33134
Telephone:  (786) 221-0600
Facsimile:  (786) 221-0601
Attorneys for the Defendant
Nina (Bermida) Ltd. d/b/a
FTD Shipping Lines

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via

US Mail on July 1__ 2006 to all parties per the following service list:

Michael A. Garcia
mgarcia@fowler-white.com
Fowler White Burnett, P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida  33131
Tel:    (305) 789-9200
Fax:    (305) 789-7201
Attorney for the Plaintiff
G & G Marine, Inc. d/b/a G & G Shipping

By: _____
        Michael T. Moore, Esq.
        Erin J. Ackor, Esq.

# EXHIBIT "A"

IN THE CIRCUIT COURT OF THE 17TH
JUDICIAL CIRCUIT IN AND FOR
BROWARD COUNTY, FLORIDA

CIVIL DIVISION

CASE NO.:     **06009346**

G & G MARINE, INC., d/b/a G & G SHIPPING,

      Plaintiff,

vs.

NINA (BERMUDA) LTD., d/b/a FTD SHIPPING
LINES,
     BERMUDA

      Defendant.

_____/

### COMPLAINT

    Plaintiff, G & G MARINE, INC., d/b/a G & G SHIPPING ("G & G") by and through

undersigned counsel and in accordance with the applicable Florida Rules of Civil Procedure,

hereby sues Defendant, NINA (BERMUDA) LTD., d/b/a FTD SHIPPING LINES, ("FTD"), and

G & G states:

### 1 - Parties Jurisdiction and Venue

    1.    This is an action for money damages in excess of $15,000.00 exclusive of interest,

costs and attorney's fees.

    2.    The Plaintiff is a Florida corporation which engages in business in Broward

County, Florida primarily in the ocean shipping trade to the Bahamas.

    3.    Defendant FTD is a foreign corporation doing business in Broward County,

Florida and with a mailing address of P.O. Box 460695, Ft. Lauderdale, Florida 33316.

1

CASE NO.:

4.     Venue is proper in Broward County, Florida because Defendant has engaged in business as stated herein in Broward County, Florida and the causes of action alleged herein accrued in Broward County, Florida.

5.     Plaintiff has retained the undersigned law firm to represent it in this action and has agreed to pay the firm a reasonable fee for professional services rendered.

6.     All conditions precedent to the bringing of this action have occurred, been waived, been performed or been excused.

### II - General Allegations

7.     Commencing in the late summer and early fall of 2005, Defendant FTD and G & G began talks about the possibility of having FTD expand FTD's shipping business into the Turks and Cacaos Islands, specifically Grand Turk Island.

8.     During these discussions between FTD and G & G, FTD ran its ships to Haiti, and the Dominican Republic but had not entered or been able to break into the Grand Turk Island market, and despite previous attempts to do so.

9.     Thus, FTD represented on numerous instances that it was soliciting G & G's expertise and/or services to assist it, FTD, in entering and/or breaking into Grand Turk Island for ocean shipping services and developing business therein.

10.    As part of FTD's representations to G & G, FTD represented that if it, G & G, agreed to rent space on one or more of FTD's vessels intended to sail to the Turks and Cacaos Islands, than it, FTD, would thereby gain exposure, knowledge and entry into the Grand Turk Island market.

2

CASE NO.:

11.     More specifically, FTD represented to G & G that if G & G agreed to rent space on FTD's M/V TOKAI, which FTD intended to run to Grand Turk, then FTD would thereby commence exposure into the Grand Turk market in the hopes of entering said market, starting business and expanding its business presence in Grand Turk.

12.     From G & G's perspective, these representations were appealing since, and among other things, G & G would merely be renting space aboard an FTD vessel and thereby moving cargo to G & G's already then existing clients in Grand Turk; as part of this arrangement G & G would thus be servicing its Grand Turks clients.

13.     In other words, the parties discussed and G & G understood that if G & G rented space aboard FTD's M/V TOKAI, to ship cargo to Grand Turk, G & G would be efficiently servicing its then existing clients while teaching FTD about the Turks and Cacaos Island markets with specific reference to Grand Turk.[1]

14.     Without G & G's knowledge and/or assistance to FTD, FTD would not have been able to successfully enter the Grand Turk Island market or succeed in such a market.

15.     Thus, it behooved FTD to utilize G & G's expertise in order to enter the Grand Turk market as a mechanism and/or tool whereby G & G would rent vessel space and permitting FTD, albeit indirectly, to enter the Grand Turk shipping market.

---

[1]     Prior to its talks as explained herein with G&G, FTD's main business in the area centered on Providenciales, The Bahamas. FTD's brochures reflected the Providenciales as FTD's main target market.

3

CASE NO.:

16.     In this regard, the parties signed on November 4, 2005 a Space Charter Agreement whereby G & G agreed to charter limited space aboard the M/V TOKAI and furnish certain TEU quantities for a short term basis of six (6) months.

17.     However, at no time prior to the entry of the November 4, 2005 Space Charter Agreement did G & G know, or remotely believe, that FTD was misrepresenting FTD's true intentions and/or designs behind the Space Charter Agreement or ultimate intentions and/or designs for Grand Turk.

18.     In short, FTD intended to use the Space Charter Agreement as a tool to dupe G & G to enter the same in order to extract, wrongfully, rental payments from G & G while ultimately taking over all of G & G's business in and around Grand Turk Island.

19.     Reflective of FTD's true intentions is the fact that FTD would routinely miss voyages to Grand Turk albeit simultaneously requiring G & G to make rental payment including providing guaranteed TEUs.

20.     Also reflective of FTD's true intentions, FTD's representatives stayed behind on joint G&G/FTD visits to Grand Turk and deliberately began soliciting G&G's then existing Grand Turk agent without disclosing such talks to G&G.

21.     The first FTD undisclosed talks with G&G's Grand Turk agent took place as early as two (2) months after entry into the Space Charter Agreement; many subsequent FTD visits

4

took place and FTD ultimately signed G&G's Grand Turk agent as one of their own, to the detriment and total disregard of G&G.[2]

22.     By way of misstatements and misrepresentations, FTD also lured G&G to thinking that it [FTD] would purchase certain aspects of G&G's Grand Turk business when, in reality, FTD desired to never buy anything but instead put G&G out of the Grand Turk business altogether.

23.     FTD's scheme and misrepresentations have caused G & G great damages for which it has been forced to commence this legal proceeding.

### COUNT I - Fraudulent Inducement

24.     G & G readopts and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

25.     Defendant FTD made oral representations prior to the entry of the Space Charter Agreement, including written representations with the knowledge that such representations would be relied upon by G & G to G & G's detriment and would otherwise cause G & G to enter into the Space Charter Agreement dated November 4, 2005.

26.     The foregoing representations were materially false when made by FTD, and FTD knew or had reason to know that said representations were false at the time they were made, knew that the same were misleading, made the representations with the specific intent that G & G would rely thereon, or otherwise made the representations with the specific intent to dupe G & G

---

[2]     For many reasons to be disclosed during discovery, this Grand Turk agent is vitally important to the Grand Turk shipping business.

5

CASE NO.:

with respect to the Space Charter Agreement as well as the business which was being conducted between the parties including FTD's ultimate goals.

27.     G & G did in fact rely on the misrepresentations of FTD.

28.     The misrepresentations and false statements by FTD personnel included statements that a) FTD was entering into the Space Charter Agreement solely to rent space to G & G and for no other purpose; b) that G & G would not be subjected to rental payments or any other expenses or payments should voyages be missed; c) that FTD had no intentions of using G & G to enter into the Turks and Cacaos Island markets to the detriment of G & G; d) that FTD was not using G & G to one day steal G & G clients and/or customer lists and/or business; e) that FTD was not employing the Space Charter Agreement as a tool to usurp G & G's then existing Grand Turk business and/or G & G's then existing business in the Turks and Cacaos Islands; f) that FTD and/or its representatives and/or agents including but not limited to representatives on land and/or in port and/or on vessels would never become hostile or belligerent with G & G's then existing customers in Grand Turk and/or other islands; g) that FTD would never adversely affect the reputation and/or goodwill of G & G in Grand Turk and/or other islands; h) that all cargo and/or containers provided by G & G would be properly carried by FTD aboard its vessels without damage; I) that FTD would not have any of its voyages adversely affect G & G's then existing customers and/or cause their dissatisfaction; and other similar representations uttered by FTD so as to dupe G & G into entering into the Space Charter Agreement.

29.     Relying on these statements, which were actually misrepresentations, G & G did in fact enter into the Space Charter Agreement with FTD.

6

CASE NO.:

30.  But for the aforementioned misrepresentations, G & G would not have entered into the Space Charter Agreement; G & G would not have ever revealed any of its customers and/or customer lists to FTD; and G & G would never have entered into any business transaction with FTD; and G & G would never have taught FTD anything about the Grand Turk business.

31.  Thus, the representations were material and wrongfully uttered by FTD so as to induce G & G to act when it otherwise would not have acted.

32.  As a direct and proximate result of FTD's wrongful conduct, G & G has suffered and will continue to suffer substantial damages.

WHEREFORE, Plaintiff G & G respectfully requests that this Court enter judgment in its favor and over and against Defendant FTD and award G & G damages in excess of $15,000.00, prejudgment interest at the applicable statutory rate; court costs; and such other and further relief as this Court deems just and proper.

<u>**Count II - Rescission**</u>

33.  G & G readopts and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

34.  For any one and/or all of the reasons set forth below G & G is entitled to rescission of the Space Charter Agreement; a) G & G entered into various oral understandings with FTD prior to the entry into the Space Charter Agreement; b) G & G believed the misrepresentations or fraudulent statements stated by FTD to G & G as stated above; c) G & G entered into the Space Charter Agreement based upon fraud because representations made by FTD as set forth above were false when made and FTD knew them to be false at the time they

7

were made or had no present intent to perform the acts which were the subject of the

representations at the time they were made; d)  FTD made the representations as stated above

intending to induce G & G to agree to enter into the Space Charter Agreement; e)  FTD always

had the intent and design to usurp G & G's business interests in Grand Turk as well as other

Islands at the time that the parties were negotiating the Space Charter Agreement, entered into

the Space Charter Agreement, and/or during the Space Charter Agreement; f)  prior to entry into

the Space Charter Agreement, G & G was not aware of the falsity of FTD's representations, as

they were misrepresentations, or of the true nature behind FTD's intentions and designs; g)  FTD

never disclosed material facts to G & G; h)  FTD never disclosed its true intentions and/or

designs to G & G, with particular reference to FTD's designs relating to G & G's customers and

then existing reputation and good will in Grand Turk; among other things.

35.      Recession of the Space Charter Agreement would be fair and equitable and would

not be unduly harsh or prejudicial to Defendant, especially in light of their inequitable conduct as

set forth above.

36.      G & G has reason to fear and does fear that if the Space Charter Agreement is not

rescinded it will continue to cause serious harm and injury to G & G.

37.      G & G has no other adequate remedy at law.

WHEREFORE Plaintiff G & G respectfully requests that the Court enter judgment in its

favor and over and against Defendant FTD and order that the parties be restored to their original

status, *Nunc Pro Tunc,* as if the Space Charter Agreement had not been created in the first

8

CASE NO.:

instance and had not occurred; that the Space Charter Agreement be canceled; for court costs; and for such other and further relief as the Court deems just and proper.

### Count III - Fraudulent Misrepresentations

38.    G & G readopts and realleges the allegations contained in paragraphs 1 through 20 as if fully set forth herein.

39.    Defendant FTD made oral representations prior to the entry of the Space Charter Agreement, including written representations with the knowledge that such representations would be relied upon by G & G to G & G's detriment and would otherwise cause G & G to enter into the Space Charter Agreement dated November 4, 2005.

40.    The foregoing representations were materially false when made by FTD, and FTD knew or had reason to know that said representations were false at the time they were made, knew that the same were misleading, made the representations with the specific intent that G & G would rely thereon, or otherwise made the representations with the specific intent to dupe G & G with respect to the Space Charter Agreement as well as the business which was being conducted between the parties including FTD's ultimate goals.

41.    G & G did in fact rely on the misrepresentations of FTD.

42.    The misrepresentations and false statements by FTD personnel included statements that a)  FTD was entering into the Space Charter Agreement solely to rent space to G & G and for no other purpose; b)  that G & G would not be subjected to rental payments or any other expenses or payments should voyages be missed; c)  that FTD had no intentions of using G & G to enter into the Bahamian and/or Turks and Cacaos Island markets to the detriment of G &

9

CASE NO.:

G; d) that FTD was not using G & G to one day steal G & G clients and/or customer lists and/or business; e) that FTD was not employing the Space Charter Agreement as a tool to usurp G & G's then existing Grand Turk business and/or G & G's then existing business in the Turks and Cacaos Islands; f) that FTD and/or its representatives and/or agents including but not limited to representatives on land and/or in port and/or on vessels would never become hostile or belligerent with G & G's then existing customers in Grand Turk and/or other islands; g) that FTD would never adversely affect the reputation and/or goodwill of G & G in Grand Turk and/or other islands; h) that all cargo and/or containers provided by G & G would be properly carried by FTD aboard its vessels without damage; i) that FTD would not have any of its voyages adversely affect G & G's then existing customers and/or cause their dissatisfaction; and other similar representations uttered by FTD so as to dupe G & G into entering into the Space Charter Agreement.

43.     Relying on these statements, which were actually misrepresentations, G & G did in fact enter into the Space Charter Agreement with FTD.

44.     But for the aforementioned misrepresentations, G & G would not have entered into the Space Charter Agreement; G & G would not have ever revealed any of its customers and/or customer lists to FTD; and G & G would never have entered into any business transaction with FTD; and G & G would never have taught FTD anything about the Grand Turk business.

45.     Thus, the representations were material and wrongfully uttered by FTD so as to induce G & G to act when it otherwise would not have acted.

46.     As a direct and proximate result of FTD's wrongful conduct, G & G has suffered and will continue to suffer substantial damages.

CASE NO.:

WHEREFORE, Plaintiff G & G respectfully requests that this Court enter judgment in its favor and over and against Defendant FTD and award G & G damages in excess of $15,000.00, prejudgment interest at the applicable statutory rate; court costs; and such other and further relief as this Court deems just and proper.

### Demand for Jury Trial

Plaintiff demands a jury trial on all claims so triable.

DATED this 22nd day of June, 2006.

Respectfully submitted,

Michael Alexander Garcia
Fla. Bar No. 0161055
FOWLER WHITE BURNETT P.A.
Espirito Santo Plaza, 14th Floor
1395 Brickell Avenue
Miami, Florida 33131-3302
Telephone: (305) 789-9200
Facsimile: (305) 789-9201

[mvc] W:\54375\COMPLA74.MAG{6/22/6-15:11}

JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

## I. (a) PLAINTIFFS

G & G MARINE, INC., d/b/a G & G SHIPPING

**(b)** County of Residence of First Listed Plaintiff  BROWARD
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Fowler White Burnett, P.A.
1395 Brickell Ave - 14th Floor
Miami, FL 33131

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## DEFENDANTS

NINA (BERMUDA) LTD., d/b/a FTD SHIPPING LINES

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT
LAND INVOLVED.

Attorneys (If Known)

Moore & Company, P.A., 355 Alhambra Circle, Suite 1100,
Coral Gables, FL 33134

*(handwritten):* V HOPKINS
*(handwritten):* CIV-HURLEY
*(handwritten):* 06-61047
*(handwritten):* C:06CV61047-Hurley Hopkins

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☑ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☑ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1  Original Proceeding   ☑ 2  Removed from State Court   ☐ 3  Re-filed- (see VI below)   ☐ 4  Reinstated or Reopened   ☐ 5  Transferred from another district (specify)   ☐ 6  Multidistrict Litigation   ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case  ☐ YES  ☐ NO     b) Related Cases  ☐ YES  ☐ NO

JUDGE                                     DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):

this case is being removed pursuant to 28 U.S.C. section 1441.

LENGTH OF TRIAL via  3  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $  75,000 plus

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☑ Yes  ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD   DATE

FOR OFFICE USE ONLY

AMOUNT  300  RECEIPT #  537644  IFP